IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CALVIN MITCHELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No.   13-cv-860-MJR-SCW |
| ) | |
| STEPHEN BAKER and KIM BUTLER, ) | |
| ) | |
| Defendants. ) | |

**REPORT AND RECOMMENDATION**

**WILLIAMS, Magistrate Judge:**

### I.   Introduction

This case is before the Court on Plaintiff's motion for preliminary injunction/immediate transfer (Doc. 64). The matter has been referred to United States Magistrate Judge Stephen C. Williams by United States District Judge Michael J. Reagan pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (c), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a). It is **RECOMMENDED** that the District Court **ADOPT** the following findings of fact and conclusions of law, and **GRANT IN PART** Plaintiff's motion for preliminary injunction (Doc. 64).

### II.   Findings of Fact

**A.   Procedural Background**

On August 20, 2013, Plaintiff filed a motion for preliminary injunction (Doc. 1). Plaintiff alleged that a C/O Baker harassed and threatened him daily since his arrival at Menard Correctional Center on May 7, 2013 and that he believed Baker's harassment was in retaliation for a grievance Plaintiff lodged against Baker in 2004 (Doc. 4). On August 23, 2013, the Court denied his motion, indicating that Plaintiff had failed to file a formal complaint and without such a complaint the Court could not ascertain the claims and relief that Plaintiff sought (*Id.*). Plaintiff was instructed to

file a formal complaint and to renew his motion for injunctive relief in a new motion filed alongside his complaint (*Id.*).

On September 9, 2013, Plaintiff filed his formal Complaint alleging retaliation against Defendant Baker (Doc. 6).  Plaintiff's Complaint alleges that in February 2004, Baker issued a fabricated disciplinary charge against Plaintiff and Plaintiff was subsequently transferred from Menard to another facility (*Id.* at pp. 2-3).  Plaintiff has now returned to Menard and since his arrival he has had numerous incidents with Baker.  Plaintiff alleges that on June 28, 2013, Baker approached Plaintiff and threatened to beat him up or have other inmates assault him (*Id.* at p. 3).  Baker indicated that Plaintiff's cellmate had informed him of Plaintiff's plan to throw urine on Baker and Baker warned Plaintiff that if he tried anything against Baker, he would f*** Plaintiff up (*Id.*).  Further, on July 3, 2013, Baker stopped at Plaintiff's cell and pointed a shotgun at Plaintiff, threatening to kill him.  Plaintiff alleges that Baker is constantly harassing him (*Id.*).  As Plaintiff sought injunctive relief as part of his damages, the Court also directed that Warden Richard Harrington, warden of Menard at the time,[1] remain a defendant in the case in his official capacity for purposes of implementing any awarded injunctive relief.

Alongside Plaintiff's Complaint, he filed a Motion for Preliminary Injunction (Doc. 8), which sought a transfer to another prison due to Baker's continuous harassment.  In response, Defendants noted that Defendant Baker was on medical leave for an undetermined amount of time and was not currently at Menard.  In light of Defendants' statements that Baker was not at Menard, the Court ultimately denied Plaintiff's motion but instructed Defendant Harrington to inform the Court promptly, should Baker return to duty at Menard (Doc. 47).

---

[1] Since Plaintiff filed his Complaint, Kim Butler has taken over the position of warden at Menard Correctional Center.   As such, on June 3, 2014, Butler was substituted as a defendant in place of Warden Harrington.

On March 17, 2014, Plaintiff filed a Motion to Hold in Contempt (Doc. 51) arguing that Baker had returned to work but that Defendants had failed to inform the Court. Defendant Harrington filed a Response indicating that the litigation coordinator had not informed counsel of Baker's return until March 19, 2014 when he had returned to duty on March 11, 2014. Counsel for Defendants indicated that he was unaware of District Judge Reagan's order requiring him to provide notice of Baker's return to service and thus he did not respond promptly when Baker returned to work (Doc. 63). In light of counsel's misunderstanding regarding the Court's order, the undersigned recommended that Plaintiff's motion to hold Defendants in contempt be denied (Doc. 63). Plaintiff was also informed that he would need to file another motion for emergency transfer if he still sought such relief in light of Baker's return to duty. The undersigned gave his recommendation to District Judge Reagan in a formal Report and Recommendation.

While the Report and Recommendation to District Judge Reagan was still pending, Plaintiff filed the instant Motion for Preliminary Injunction (Doc. 64). Plaintiff argued that since Baker's return to duty, he has continued to harass Plaintiff. Specifically, Plaintiff noted that on March 12, 2014, Baker entered his cell and threatened him and later that same day he kicked Plaintiff in the butt as he returned Plaintiff to his cell. Plaintiff also alleged that on April 10, 2014, Baker came to his cell and told his cellmate and him to cuff up for a shake down. He then escorted his cellmate out of the cell but kept Plaintiff in the cell and pushed him, smacked him repeatedly, and threatened him. Plaintiff requested that his motion for preliminary injunction be granted as he feared for his life due to Baker's continued harassment.

On May 8, 2014, District Judge Reagan, adopted the undersigned's findings in the Report and Recommendation on the motion to hold in contempt and referred the pending motion for preliminary injunction to the undersigned for a hearing (Doc. 68). In response to Plaintiff's motion,

Defendants filed a Response (Doc. 66) and Plaintiff has filed a Reply (Doc. 69).

**B.     Evidentiary Hearing**

On June 2, 2014, the undersigned held an evidentiary hearing on Plaintiff's current motion for preliminary injunction.

At the hearing, Plaintiff first called Ellean Nance to testify. Nance is an inmate at Menard Correction Center who is celled four cells down from Plaintiff. Nance testified that on March 12, 2014, both he and Mitchell were coming back from the showers. They were in line and handcuffed behind their backs as the prison was on lockdown. Nance stated that he saw C/O Baker kick Plaintiff as he was going into his cell. Although he could not identify the exact exchange between Plaintiff and Baker, as Nance noted Plaintiff was housed in Cell 7 and Nance in Cell 3, he could make out Baker saying the words "lawsuit" and "coward", and Baker used a racial slur towards Plaintiff, the "n" word. Nance testified that he did not note anything specific about the statements with Baker other than those three words and he did not notify anyone about the incident.

Plaintiff also called inmate Desmond Myrick, who was Plaintiff's cellmate on April 10, 2014. During the 3-11 shift, Myrick testified that Baker came to Plaintiff's cell and removed Myrick for a shakedown. He handcuffed Myrick and took him out of the cell, handcuffing him to the cell. Baker then pushed Plaintiff to the back of the cell and began smacking Plaintiff in the face. Myrick testified that Baker hit Plaintiff five or six times and did not stop until Myrick starting yelling for a lieutenant. No lieutenant ever came to the cell, but Baker stopped hitting Plaintiff, unhandcuffed Myrick, returned him to the cell, and left. Baker, according to Myrick, never conducted a shakedown of the cell. Myrick testified that he did not hear Baker say anything to Plaintiff during the incident.

Plaintiff also testified at the evidentiary hearing. Plaintiff testified that Baker continues to harass him for a false ticket Baker wrote him in 2004. Every time he comes into contact

with Baker, Baker harasses or pushes him. Plaintiff indicated that during the March 2014 incident, Baker kicked him in the butt and on April 10 he pushed Plaintiff around. Plaintiff testified that he suffers from high blood pressure and due to Baker's harassments Plaintiff fears that he will suffer from a stroke. Plaintiff stated that Baker has harassed him in the past, including an incident that made up the allegations in his complaint where Baker pointed a gun at Plaintiff and threatened him. He testified that he has filed numerous grievances on Baker's actions, including grievances filed the same day as the March and April incidents. He claims that he has not received a response from either of those grievances. Plaintiff states that he has asked for protective custody because of Baker but Menard Correctional Center has told him that he cannot request protective custody on the basis that a correctional officer is his enemy.

Defendants called Jill Wehrheim, a human resources associate at Menard Correctional Center, to testify. Wehreheim prepares transactions for personnel actions regarding employees, including leave of absences, evaluations, and hiring/firing paperwork. She testified that, at the time of the hearing, Baker was on a leave of absence starting May 6, 2014. He had a doctor's note indicating that he would be absent until at least June 3, 2014, the day after the evidentiary hearing. She also testified that Baker was on leave from July 24, 2013 until March 10, 2014 and that while on a leave of absence he was completely absent from the facility and not merely working in a different part of the prison.

### III. Conclusions of Law

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." **Mazurek v. Armstrong, 520 U.S. 968, 972 (1997).** *Accord Winter v. Natural Res. Def. Council, Inc.,* **555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of**

**right").** To win a preliminary injunction, a plaintiff must show (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm without the injunction, (3) that the harm he would suffer is greater than the harm a preliminary injunction would inflict on defendants, and (4) that the injunction is in the public interest. *Judge v. Quinn*, 612 F.3d 537, 546 (7th Cir. 2010) (citing *Winter*, 555 U.S. at 20). The "considerations are interdependent: the greater the likelihood of success on the merits, the less net harm the injunction must prevent in order for preliminary relief to be warranted." *Judge*, 612 F.3d at 546.

In the context of prisoner litigation, there are further restrictions on courts' remedial power. The scope of the court's authority to enter an injunction in the corrections context is circumscribed by the Prison Litigation Reform Act (PLRA). *Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012). Under the PLRA, preliminary injunction relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." **18 U.S.C. §3626(a)(2).** *See also Westefer*, **682 F.3d at 683 (the PLRA "enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: prison officials have broad administrative and discretionary authority over the institutions they manage") (internal quotation marks and citation omitted).**

The Seventh Circuit has described injunctions like the one sought here, where an injunction would require an affirmative act by the defendant, as a mandatory preliminary injunction. *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 295 (7th Cir. 1997). Mandatory injunctions are "cautiously viewed and sparingly issued," since they require the court to command a defendant to take a particular action. *Id.* (citing *Jordan v. Wolke*, 593 F.2d 772, 774 (7th Cir. 1978)). *See also W.A. Mack, Inc. v. Gen. Motors Corp.*, 260 F.2d 886, 890 (7th Cir. 1958) ("A preliminary

**injunction does not issue which gives to a plaintiff the actual advantage which would be obtained in a final decree.").**

Here, the Court finds that Plaintiff has offered unrebutted evidence which entitles him to a preliminary injunction. At the hearing, Plaintiff's testimony, as well as testimony from his inmate witnesses, demonstrated his likelihood of success on the merits. Plaintiff testified that every time he comes into contact with Defendant Baker, Baker harasses or threatens him in some way. The testimony indicates that Plaintiff has been threatened by Baker from the start of his transfer to Menard Correctional Center until the present day, and Plaintiff has cited to encounters he has had with Baker from May 2013 up to March and April 2014. The undersigned find Plaintiff's testimony as to these encounters with Baker to be credible.

Not only did Plaintiff offer his own credible testimony, but his testimony was backed up by two witnesses which Plaintiff called at the evidentiary hearing, two inmates who either shared a cell with Plaintiff or were in close proximately to Plaintiff's cell. Inmate Nance recalled the incident with Baker on March 12, 2014 where Baker kicked Plaintiff as the inmates returned from the shower room. While Nance acknowledged that he could not make out all that was spoken to Plaintiff by Baker, as Nance's cell was four cells down from Plaintiff's, Nance was able to hear Baker say the words "lawsuit", "coward", and the "n" word. The undersigned found Nance's testimony to be credible.

The Court also found Myrick's testimony regarding the April 10, 2014 incident with Baker to be consistent and credible. Myrick testified that Baker came to the cell that he shared with Plaintiff allegedly for a cell shakedown but upon removing Myrick from the cell, he proceeded to push Plaintiff to the back of the cell and slap him several times. Baker did not stop until Myrick called for help. The undersigned found Myrick's testimony credible and Defendants failed to counter any of the witnesses' testimony with any testimony of their own. Instead, they simply offered the testimony

of human resources associate, Jill Wehrheim, who testified that Baker was on a leave of absence from July 24, 2013 to March 10, 2014 and was currently on a leave of absence that was effective May 6, 2014 and set to end on June 3, 2014. This testimony, however, does not contradict Plaintiff or his witnesses' testimony as the incidents described took place on March 12, 2014 and April 10, 2014, all dates when Baker was back on duty and not on leave. The undersigned also finds Baker's second absence suspect as his leave began the day after counsel filed his responsive brief on Plaintiff's motion and Baker was scheduled to return to work the day after the Court's evidentiary hearing. Counsel for Defendants acknowledged that he had trouble contacting Baker regarding the evidentiary hearing due to his leave of absence and no other correctional officers were called to refute the testimony of the inmates, despite the fact that inmate Nance testified that other correctional officers were on the gallery when Baker kicked Plaintiff on March 12.

    The undersigned also finds that Plaintiff is likely to suffer harm if an injunction is not issued. Although Plaintiff testified that he suffers from high blood pressure and that his encounters with Baker could lead to a stroke or death as he gets agitated during his encounters with Baker, the undersigned finds this allegation to be a stretch and Plaintiff has failed to offer any evidence that he has a risk of serious health issues. However, there is evidence that Plaintiff will suffer harm in that the evidence suggests that Plaintiff will continue to be threatened, harassed, and physically attacked should an injunction not be entered. Plaintiff has alleged a continuing violation and argues that every time he encounters Baker, Baker harasses and assaults him either physically or verbally. The unrebutted evidence at the hearing backs Plaintiff's claims. Thus, the undersigned finds that Plaintiff has met this prong of the analysis. Likewise, there is evidence that Plaintiff's potential to be harmed by Baker is greater than the least intrusive means of keeping Baker away from Plaintiff.

    Defendants argue that Plaintiff's requested injunctive relief, to be moved to another

prison, goes beyond what the PLRA allows and fails to give discretion to IDOC, who is in charge of housing inmates. While the undersigned agrees that a transfer at this time would not be the most narrowly drawn and least intrusive means of providing the necessary relief to Plaintiff, *see Westefer v. Neal*, **682 F.3d 679, 684 (7th Cir. 2012) (overruling an injunction toward a super-max prison that laid out highly specific requirements regarding notice and hearing requirements for transferring prisoners)**, the undersigned is also cognizant of the Supreme Court's directive that a court can "not allow constitutional violations to continue simply because a remedy would involve intrusion into the realm of prison administration." *Brown v. Plata*, **-- U.S. --, 131 S.Ct. 1910, 1928-29 (2011).** Further, the undersigned finds that there are other lesser means which could give discretion to IDOC while protecting Plaintiff from further harm from Baker, including transferring Baker or Plaintiff to another unit so that they do not come into contact with each other. Thus, the undersigned recommends that Warden Butler be **DIRECTED** to keep Baker and Plaintiff separated during the pendency of this case. Thus, Butler is **DIRECTED** to produce a plan to this Court to keep Baker from coming into contact with Plaintiff during this case in order to protect Plaintiff from being further injured by Baker. Although the undersigned leaves up to Butler the decision on how to accomplish that task, whether it be a transfer of Baker to another unit or through some other means, the undersigned **RECOMMENDS** that Butler be **DIRECTED** to provide the Court with a plan of how she plans to implement this injunction within fourteen (14) days of the adoption of this Order so that the Court may evaluate whether the proposed plan satisfies the constitutional concerns presented by Plaintiff's motion. Such a directive will provide the required relief to Plaintiff while maintaining IDOC's discretion in the administration of the prisoners under their authority. *See Westefer*, **682 F.3d at 686 (IDOC is to craft procedures which meet constitutional requirements and the district court should do no more than to order IDOC officials to do so in general terms).**

## IV. Conclusion and Recommendation

Accordingly, the undersigned **RECOMMENDS** that the Court **ADOPT** the undersigned's findings, **GRANT IN PART** Plaintiff's motion for preliminary injunction (Doc. 64), and **DIRECT** Warden Butler to produce a plan to this Court within fourteen (14) days of the adoption of this Report and Recommendation which will accomplish the directive of keeping Baker from coming into contact with Plaintiff during the pendency of this case.

Pursuant to **28 U.S.C. § 636(b)(1)** and **Local Rule 73.1(b),** the parties may object to any or all of the proposed dispositive findings in this Recommendation. The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *See, e.g., Snyder v. Nolen*, **380 F.3d 279, 284 (7th Cir. 2004).** Accordingly, Objections to this Report and Recommendation must be filed on or before **June 30, 2014**.

**IT IS SO ORDERED**.
DATED: June 13, 2014.

*/s/ Stephen C. Williams*
STEPHEN C. WILLIAMS
United States Magistrate Judge